244 F.2d 409
 Francisco ROMERO, Plaintiff-Appellant,
v.
INTERNATIONAL TERMINAL OPERATING CO., Compania Trasatlantica, also known as Spanish Line, Garcia & Diaz, Inc., and Quin Lumber Co., Inc., Defendants-Appellees.
 No. 164.
 Docket 24205.
 United States Court of Appeals Second Circuit.
 Argued January 24, 1957.
 Decided April 30, 1957.
 
 Charles A. Ellis, New York City (Narciso Puente, Jr., and Silas B. Axtell, New York City, on the brief), for appellant.
 John Nielsen, New York City (John P. Smith, New York City, on the brief), for defendant-appellee International Terminal Operating Co.
 John L. Quinlan, New York City (Bigham, Englar, Jones & Houston, and John B. Shields, New York City, on the brief), for defendants-appellees Compania Trasatlantica, also known as Spanish Line, and Garcia & Diaz, Inc.
 Sidney A. Schwartz, of Alexander, Ash & Schwartz, New York City (William J. Kenney, New York City, on the brief), for defendant-appellee Quin Lumber Co., Inc.
 Before HINCKS, LUMBARD and WATERMAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 We affirm on Judge Sugarman's workmanlike opinion below which contains a full statement of the facts.
 
 
 2
 We do not, however, overlook the appellant's invocation of Article VI[1] of the treaty of 1902 between the United States and Spain, 33 Stat. 2105, in support of his contention, made apparently for the first time on the appeal, that the court below had jurisdiction under the Jones Act. 46 U.S.C.A. § 688. We find nothing in the text of that Article which confers upon the appellant, a Spanish subject, the substantive rights created by the Jones Act. The appellant also argues that the abrogation of Article XXIII[2] of that treaty somehow demonstrates the presence of jurisdiction below. But as to this, appellant's counsel, with commendable candor, subsequent to argument provided us with a letter from a legal adviser in the State Department which states that Article XXIII of the 1902 treaty has been abrogated only in so far as its provisions are in conflict with the Seaman's Act of March 4, 1915, 38 Stat. 1164.[3] Neither in Article XXIII nor in its abrogation do we find support for the appellant's position on the jurisdictional questions involved.
 
 
 3
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 
 "Article VI.
 "The citizens or subjects of each of the two High Contracting Parties shall have free access to the Courts of the other, on conforming to the laws regulating the matter, as well for the prosecution as for the defense of their rights, in all the degrees of jurisdiction established by law. They can be represented by lawyers, and they shall enjoy, in this respect and in what concerns arrest of persons, seizure of property and domiciliary visits to their houses, manufactories, stores, warehouses, etc., the same rights and the same advantages which are or shall be granted to the citizens or subjects of the most favored Nation."
 
 
 [2]
 
 "Article XXIII.
 "Consuls-General, Consuls, Vice-Consuls and Consular Agents shall have exclusive charge of the internal order of the merchant vessels of their Nation and shall alone take cognizance of differences which may arise, either at sea or in port, between the captains, officers and crews without exception, particularly in refence to the adjustment of wages and the execution of contracts. In case any disorder should happen on board of vessels of either party in the territorial waters of the other, neither the Federal, State or Municipal Authorities in the United States, nor the Authorities or Courts in Spain, shall on any pretext interfere, except when the said disorders are of such a nature as to cause or be likely to cause a breach of the peace or serious trouble in the port or on shore, or when in such trouble or breach of the peace, a person or persons shall be implicated not forming a part of the crew. In any other case, said Federal, State or Municipal Authorities in the United States, or Authorities or Courts in Spain, shall not interfere, but shall render forcible aid to consular officers, when they may ask it, to search for, arrest and imprison all persons composing the crew, whom they may deem it necessary to confine. Those persons shall be arrested at the sole request of the Consul addressed in writing to either the Federal, State or Municipal Authorities in the United States, or the Authorities or Courts in Spain, and supported by an official extract from the register of the ship or the list of the crew, and the prisoners shall be held during the whole time of their stay in the port at the disposal of the consular officers. Their release shall be granted at the mere request of such officers made in writing. The expenses of the arrest and detention of those persons shall be paid by the consular officers."
 
 
 [3]
 The extent of the abrogation is stated to appear in correspondence and notification of abrogation printed in "Foreign Relations of the United States," 1915, page 3 et seq.; 1918, page 10; 1919, vol. 1, pages 54-67